## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOHN BOMAR,

               Petitioner,

                                 CIVIL NO. 2:12-CV-12225

v.                              HONORABLE SEAN F. COX

                                 UNITED STATES DISTRICT COURT

KENNETH ROMANOWSKI,

               Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

John Bomar, ("petitioner"), presently incarcerated at the Macomb Correctional Facility in New Haven, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for second-degree murder, Mich. Comp. Laws, § 750.317. For the reasons stated below, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

### I. Background

Petitioner was originally charged with first-degree premeditated murder. Following a jury trial in the Macomb County Circuit Court, petitioner was found

1

guilty of the lesser included offense of second-degree murder.

On October 23, 2007, at approximately 9:00 p.m., police responded to a call at an apartment complex in Clinton Township, Michigan involving a domestic violence situation with a person down in the hallway. (Tr. 5/29/08, p. 32). Upon arrival, Officer Correy Bonner discovered the victim lying in the apartment doorway belonging to Raquel Limon. Officer Bonner noticed a large amount of blood on the carpet close to the victim's head and shoulders. The victim took several small gasps of breath until she stopped breathing. Police and responding medical personnel were unsuccessful in their attempts to resuscitate the victim. (*Id.*, pp. 35-37).

Raquel Limon testified that the victim and petitioner lived together in an apartment unit down the hall from her. Raquel and the victim were friendly acquaintances. (Tr. 5/29/08 pp. 62-63). At approximately 9:00 p.m. on the night in question, Raquel was in her kitchen when she heard screaming. Although the screaming began from far away, as the person got closer, the screaming became louder. At this point, Raquel was able to identify the person screaming as being the victim. The victim screamed repeatedly and frantically "Raquel help!" Raquel went to open her door, but had trouble unlocking the deadbolt because of constant pressure against the door, as though a body was pressing against it. When Raquel ultimately unlocked and opened the door, she observed the victim staring at her with blood on

2

the left side of her face.  Raquel saw petitioner standing behind the victim with his hand coming up from the victim's back.  When Raquel made eye contact with petitioner, he immediately turned and ran in the direction of his apartment.  The victim dropped to the floor.  As Raquel checked to see if Grace was still breathing, the police arrived and began to perform CPR on the victim. (*Id.,* pp. 66-70).

Ella Archacki testified that she lives directly across the hall from Raquel Limon. (Tr. 5/29/08, p. 46).  At approximately 9:00 p.m. on the night of the stabbing, Ella heard the victim knocking on the door across the hall while repeatedly crying "Help me!"  Ella looked out the peephole and witnessed the victim lying on the floor in the hallway.  Ella opened the door and was informed by Raquel that petitioner "was behind Grace and hit her."  Not realizing the extent of the victim's injuries, Ella walked down the hall towards Grace's apartment, but petitioner was gone. (*Id*., pp. 51-52).

Dr. Daniel Spitz, the Macomb County Medical Examiner, performed an autopsy of the victim.  Dr. Spitz testified that the victim had received 10 stab wounds about the face, head, neck, back, chest and shoulder.  Dr. Spitz  testified that the cause of death was from a stab wound to the chest with perforation of the left lung and heart. (Tr. 5/29/08, pp. 126-30).  The toxicology report indicated that the victim had a blood alcohol level of .01, and had used anti-depressants and a muscle relaxer. (*Id.,* pp. 137-

3

2:12-cv-12225-SFC-RSW   Doc # 10   Filed 09/05/13   Pg 4 of 30   Pg ID 1233

38).

Detective William Furno of the Clinton Township Police Department was the officer in charge of the investigation. (Tr. 5/29/08, p. 109). Det. Furno obtained a search warrant and conducted a search of the victim's and petitioner's apartment, where he found the murder weapon and a bloody washcloth, both with the victim's blood on them, on a dresser in petitioner's bedroom. (*Id.*, pp. 114-15).

Charles Washington testified that he was a bus driver for the City of Detroit. On the evening of October 23, 2007, he was working when petitioner got on his bus. Petitioner informed Washington that he and his lady friend had gotten into an argument at their apartment. Petitioner told Washington that the victim came at him with a knife, they struggled, that during the struggle, they flipped over the couch, and that the knife stuck in her stomach and chest. Petitioner told Washington that he panicked and left the house. Petitioner also indicated that every time his lady friend drank white liquor, she would get violent and get into an argument. Petitioner eventually exited the bus at the Woodward Avenue and State Fair bus stop. (Tr. 5/30/08, pp. 9-14). The next day, Mr. Washington saw petitioner on the television news and contacted the Clinton Township Police Department. Mr. Washington did not see any blood nor did he see a weapon. (*Id.*, pp. 14-21).

Several witnesses testified to an incident which took place between petitioner

and the victim on June 30, 2006, in which the victim and petitioner's daughter got into an argument over a cell phone. The victim ordered petitioner to leave their apartment. Petitioner and his daughter got into a car. Petitioner backed his car out, then put it into drive and hit the victim with it. Petitioner ultimately pleaded guilty to a domestic violence charge arising out of this incident. (Tr. 5/30/08, pp. 22-36; 83-95; 97-119).

Petitioner testified in his own defense. Petitioner testified that after pleading guilty to the domestic assault charge in 2006, he had obtained a personal protection order (PPO) against the victim, because she had taken a corkscrew and cut him across his back. Although he filed a police report, he did not press charges. Petitioner further claimed that he obtained the PPO because the victim had thrown a bottle at a neighbor at the apartment complex because petitioner had taken her to pick up a check. On that occasion, the police arrived and escorted the victim off of the property. They also advised petitioner to get the PPO. Petitioner also went to court because the victim and a friend of hers had robbed him in December, 2006. Petitioner claimed that the victim had threatened to throw his things into a dumpster and when he went to retrieve them, the victim began arguing with him and had a friend grab him while she hit him with a baseball bat. (Tr. 5/30/08, pp. 188-97). Petitioner called the police and the victim was arrested. (*Id.*, p. 200). At times when the victim was angry, she

5

would throw his clothes out or cut them up.  Petitioner denied having an affair with a neighbor, even though the victim had accused him of having one. (*Id*., pp. 203-04).

Petitioner testified that on the day in question, he got up around 5:00 a.m.  The victim awoke around 7:30a.m., and sat in front of the television set with a drink in her hand.  Mr. Schulz came to the apartment to take petitioner to his probation officer.  The victim asked Mr. Schulz for money.  When he refused, the victim became angry and picked up a knife.  Mr. Schultz left.  Mr. Schultz later returned.  The victim went to the kitchen, retrieved a butcher knife and a meat cleaver and began to threaten Mr. Schultz again.  The victim eventually calmed down and Mr. Schultz gave her $30.00.  Petitioner and Mr. Schultz left the apartment and reported to the probation officer.  Petitioner returned to the apartment at about 10:30 a.m.  The victim was still drinking.  Petitioner informed the victim that he was leaving and she started arguing with him.  They continued to argue and around noon, the police arrived and petitioner left to get some cigarettes. (*Id*., pp. 210-13).

When petitioner returned, the victim began arguing with him again.  The police were called a second time by a neighbor.  The police asked petitioner to leave, which he did for couple hours and then returned.  When petitioner returned, the victim began arguing again, so he left to go to the store to buy the victim some items, including clothes.  As the victim was trying on the clothing, she started arguing with him again.

6

Petitioner took off his shirt and laid on the bed. The victim told him to leave and opened the front door, but he closed it. (*Id.*, pp. 215-16). Petitioner indicated that he and the victim got into a fight, during which she was stabbed. Petitioner indicated that the victim came at him with a knife and he feared that she was going to cut him. When the victim got close to him, petitioner grabbed the knife from her. Petitioner claimed that he did not intend to kill the victim. (*Id.*, pp. 218-20).

On cross-examination, petitioner admitted that he had lied to the police when he told them that the victim had cut him on the day in question, acknowledging that the victim had, in fact, cut him a week earlier. (*Id.*, pp. 220-21). Petitioner further admitted that he was able to take the knife away from the victim in the hallway, that she hit him so hard it knocked out his dentures, that the victim then ran down the hallway away from petitioner, and that petitioner "took off after her." Petitioner admitted to being angry when he ran after the victim. Petitioner further admitted that his life was no longer in danger after he had disarmed the victim. Petitioner claimed that he began hitting the victim but did not realize that the knife was still in his hand. (*Id.*, pp. 253-263).

Off. Ramlow responded to the apartment complex around 2:30pm on the day in question, in response to a neighbor complaint. Officer Ramlow spoke to the victim, who was having an argument with petitioner. The victim appeared intoxicated and

7

was uncooperative.  Officer Ramlow testified that petitioner had been cooperative.

Officer Ramlow believed that the victim had been the aggressor during this earlier

confrontation and had apparently locked petitioner out of the apartment. (Tr. 6/3/08,

pp. 25-43).

Petitioner was found guilty of second-degree murder and was sentenced to 25

to 40 years imprisonment.

Petitioner's conviction was affirmed on appeal. *People v. Bomar,* No. 286966

(Mich.Ct.App. November 24, 2009); *lv. den.* 485 Mich. 1130 (2010).

Petitioner then filed a post-conviction motion for relief from judgment, which

was denied. *People v. Bomar,* No. 2007-5808-FC (Macomb County Circuit Court,

August 25, 2010).  The Michigan appellate courts denied petitioner leave to appeal.

*People v. Bomar,* No. 300568 (Mich.Ct.App. June 14, 2011); *lv. den.* 490 Mich. 969

(2011). [1]

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner is entitled to either a new trial or entry of the lesser offense
of voluntary manslaughter where there was insufficient evidence to find
for the conviction of second-degree murder.

II. Petitioner is entitled to resentencing because the sentencing guidelines

---

[1]   Petitioner filed a second post-conviction motion for relief from judgment, which remained pending in the
state courts at the time he filed his habeas petition.  Because petitioner does not raise in his current petition any
claims that he raised in his second post-conviction motion, it is unnecessary for the Court to mention the citations for
the state court decisions from this second post-conviction motion in the procedural history.

range was enhanced by the improper scoring of offense variables 6 and 10, on the basis of facts not proven to a jury beyond a reasonable doubt, in violation of the Sixth and Fourteenth Amendments as defense counsel was ineffective for failing to challenge these variables at sentencing as required by counsel.

III. Petitioner was denied a fair judge and the appearance of justice where the trial judge should have recused herself due to her impartiality based on her past history with petitioner and the deceased, where her history is likely to be a material witness in the proceeding thus denying petitioner a supporting witness in his defense, in the alternative, the trial court abused its discretion with its bias and prejudice rulings.

IV. A manifest injustice has occurred in this case where petitioner's convictions were obtained on false sworn testimony in violation of his right to due process of law.

V. Petitioner was denied effective assistance of counsel where his appointed trial lawyer failed to motion Judge Chrzanowski to recuse herself or motion for her disqualification [because she lacked] impartiality based on her past history with petitioner and the deceased, Ms. Bommarito.

VI. Petitioner was deprived of due process by counsel's failure to raise the issues below which resulted in a deprivation of petitioner's constitutional rights to appeal, and to the effective assistance of counsel on appeal.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

An application for a writ of habeas corpus on behalf of a person in

custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus

imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.  Discussion

**A.  Claim # 1.  The sufficiency of evidence claim.**

Petitioner first contends that there was insufficient to convict him of second-degree murder, claiming that the evidence established that he killed his girlfriend under circumstances that should have reduced the crime to voluntary manslaughter.

The Michigan Court of Appeals rejected petitioner's claim on direct appeal:

Defendant asserts there was adequate provocation because a physical altercation between himself and the victim occurred before the killing. We note that the only evidence suggesting that an altercation occurred is defendant's testimony. Defendant testified that he and the victim were in their apartment arguing when the victim came at him with a knife. The two struggled, but defendant was able to take the knife away from the victim. Defendant testified that when the victim ran into the

11

hallway, he pursued her while still holding the knife. Defendant alleged that the victim "turned around and started swinging" at him in the hallway so "I kept hitting her and she was hitting me back." Defendant claimed that when he hit the victim he "didn't realize" that the knife was still in his hand. A neighbor in a nearby apartment testified that when she opened her door she saw the victim and defendant in the hallway. After making eye contact with defendant, the neighbor saw him "bolt" away. The victim's autopsy revealed multiple stab wounds, including defensive sharp-force injuries. The cause of death was from a stab wound to the chest with perforation of the heart and left lung.

We hold that the evidence, when viewed in the light most favorable to the prosecution, was sufficient to allow a rational jury to conclude that defendant acted with malice when he stabbed the victim. Defendant's testimony, including his claims that he pursued the victim into the hallway while holding the knife and struck her with it multiple times, along with other testimony that the victim pleaded for help and that defendant immediately fled the scene when a neighbor responded to the struggle, provides a sufficient basis for a jury to find that when defendant stabbed the victim with a knife approximately ten times, he intended to do great bodily harm or acted in wanton and wilful disregard of the likelihood that the natural tendency of his behavior would be to cause death or great bodily harm. The jury was free to disbelieve defendant's testimony that he did not realize the knife was in his hand when he struck the victim. The issue of defendant's credibility is for the jury to decide. Further, a reasonable jury could infer malice from defendant's use of a knife, a deadly weapon.

Even assuming that defendant's testimony presented adequate evidence from which the jury could have concluded that defendant was provoked and acted in the heat of passion, the determination whether the provocation was so great that a reasonable person would lose control is a question of fact for the jury. The jury was free to believe or disbelieve, in whole or in part, the testimony presented at trial. We will not second-guess the jury's determination of witness credibility or reweigh the evidence.

*Bomar,* Slip. Op. at 2-3 (internal citations omitted).

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable

13

consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).          Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *See Stewart v. Wolfenbarger,* 595 F. 3d 647, 654 (6th Cir. 2010)(citing *People v. Goecke*, 457 Mich. 442 463-64; 579 N.W.2d 868 (1998)). "[M]alice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* (citing *People v. Aaron*,

14

409 Mich. 672, 728; 299 N.W.2d 304 (1980)).   Additionally, "[t]he offense of second-degree murder 'does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences.'" *Stewart,* 595 F. 3d at 658 (quoting *People v. Aldrich*, 246 Mich.App. 101, 123; 631 N.W.2d 67 (2001)).

Petitioner contends that there was insufficient evidence presented to sustain his conviction for second-degree murder, because the prosecution failed to prove beyond a reasonable doubt that petitioner did not kill the victim in the heat of passion that was caused by an adequate provocation.

Under Michigan law, a defendant is guilty only of voluntary manslaughter if he "killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Ruelas v. Wolfenbarger*, 580 F. 3d 403, 413 (6th Cir. 2009)(quoting *People v. Mendoza,* 468 Mich. 527, 535, 664 N.W.2d 685 (2003)).   However, although the prosecutor must prove their case beyond a reasonable doubt, under Michigan law, the burden of proof to show provocation is on the defendant, and it must be shown by a preponderance of the evidence. *Id.* (citing *People v. Darden*, 230 Mich. App. 597, 604, 585 N.W.2d 27, 31 (1998)).   Indeed, absence of provocation is not an element which the prosecution must prove for a conviction of second degree murder in

15

Michigan. *See Cook v. Stegall,* 56 F. Supp. 2d 788, 795-96 (E.D. Mich. 1999)(citing *People v. Deason*, 148 Mich. App. 27; 384 N.W.2d 72 (1985)).

Habeas review of sufficiency-of-the-evidence claims is limited to reviewing the elements of the crimes as defined by state law. *See Allen v. Redman*, 858 F. 2d 1194, 1197 (6th Cir.1988)(explaining that and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F. 2d 50 (6th Cir. 1986)).  "[I]f an ingredient of a crime is not an element of the offense and does not negate an element, ... a state law can properly shift the burden of proving that factor onto the defendant." *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2001), *overruled on other grounds* by *Bowling v. Parker*, 344 F. 3d 487, 501 n. 3 (6th Cir. 2003).  Because absence of provocation is not an element of second-degree murder, it was not necessary for the prosecutor to prove beyond a reasonable doubt that petitioner did not act under an adequate provocation when he killed the victim, so as to sustain his conviction for second-degree murder.

Moreover, the evidence, when viewed in a light most favorable to the prosecutor, was sufficient to permit a rational trier of fact to conclude that petitioner acted with malice when he stabbed the victim, so as to sustain his conviction for second-degree murder.  Petitioner's own testimony that he chased after the victim down the hallway of their apartment complex while she repeatedly screamed for help,

16

before stabbing her ten times, including once in the chest, was sufficient to establish that petitioner acted with the requisite malice to support his second-degree murder conviction. Moreover, as the Michigan Court of Appeals noted, the jurors were free to disbelieve petitioner's testimony that he was unaware that the knife was in his hand when he assaulted the victim.

In the present case, there was sufficient evidence for a rational trier of fact to determine that petitioner acted with malice aforethought when he stabbed the victim repeatedly while she screamed for help. Even if there was evidence presented which could have supported a verdict of manslaughter, this Court must view the evidence in a light most favorable to the prosecution and the jury was not required to accept petitioner's version of the facts. *See Williams v. Jones,* 231 F. Supp. 2d 586, 595 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on his first claim.

**B. Claim # 2. The sentencing guidelines claim.**

Petitioner next contends that the judge improperly scored Offense Variables 6 and 10 of the Michigan Sentencing Guidelines by considering factors that had not been proven beyond a reasonable doubt or admitted to by petitioner. Petitioner further contends that trial counsel was ineffective for failing to object to the scoring of the sentencing guidelines on this basis.

Petitioner's claim that the state trial court incorrectly scored or calculated his

17

sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *see also Haskell v. Berghuis,* 695 F. Supp. 2d 574, 598 (E.D. Mich. 2010)*;Coy v. Renico,* 414 F. Supp. 2d 744, 780 (E.D. Mich. 2006). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009)(citing *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005)).  "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).  Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.*

Petitioner further contends that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors that had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by petitioner when scoring the Michigan Sentencing Guidelines.

On June 17, 2013, the United States Supreme Court ruled that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal

18

offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 133 S. Ct. 2151, 2155 ( 2013). *Alleyne* is an extension of the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004), in which the U.S. Supreme Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. In reaching this conclusion, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), in which the Supreme Court had held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a factfinder. *Alleyne,* 133 S. Ct. at 2157-58.

At the time of petitioner's conviction and sentence, *Harris* was good law. In addition, there is no indication that the Supreme Court made their holding in *Alleyne* retroactive to cases on collateral review. *See e.g. Simpson v. U.S.,* __ F. 3d __, 2013 WL 3455876, * 1 (7th Cir. July 10, 2013); *see also Gibson v. Tribley,* No. 10-13364, 2013 WL 3353905, * 8 (E.D. Mich. July 3, 2013). A federal district court may only grant habeas relief if it finds that the state court's decision was "'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence that was presented in

the State court proceeding.'" *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) (quoting 28 U.S.C. § 2254(d)). In addition, "[t]he law in question must have been clearly established at the time the state-court decision became final, not after." *Id*. (citing *Williams v. Taylor*, 529 U.S. at 380). Because the Supreme Court at the time of petitioner's conviction did not require that facts which increase a criminal defendant's minimum sentence be proven beyond a reasonable doubt, petitioner is not entitled to habeas relief on his second claim. *Gibson,* 2013 WL 3353905, Slip. Op. at * 8.[2]

### C.   Claims ## 3, 4, 5, and 6.   Petitioner's remaining claims are procedurally defaulted.

Respondent contends that petitioner's remaining claims are procedurally defaulted because petitioner raised these claims for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise these claims in his appeal of right, as required by M.C.R. 6.508(D)(3).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the

---

[2]   Because the holdings in *Apprendi* and *Blakely* were inapplicable to petitioner's sentence at the time of his sentencing, trial counsel was not ineffective for failing to object to the scoring of the sentencing guidelines on this basis. *See e.g. Rupert v. Berghuis*, 619 F. Supp. 2d 363, 371 (W.D. Mich. 2008).

failure to raise such grounds previously and actual prejudice resulting therefrom.  For purposes of a conviction following a trial, "actual prejudice" means that "but for the alleged error, the defendant would have had a reasonably likely chance of acquittal." M.C.R. 6.508(D)(3)(b)(i).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  In addition, "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624

(1998).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last

22

reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

In the present case, the Macomb County Circuit Court judge, in denying petitioner's post-conviction motion, ruled that petitioner had failed to establish "good cause" for failing to raise his claims on his appeal of right and had also failed to establish "actual prejudice." *Bomar,* No. 2007-5808-FC, Slip. Op. at 2. The trial court judge clearly denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), thus, petitioner's post-conviction claims are procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F.3d 284, 292-93 (6th Cir. 2007); s*ee also Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir. 2005). Petitioner's remaining claims are procedurally defaulted.[3]

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones*

---

[3] Petitioner could not have procedurally any ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette*, 624 F.3d at 291. However, for the reasons stated below, petitioner is not entitled to habeas relief on this claim.

*v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has
explained:

> "For judges to second-guess reasonable professional judgments and
> impose on appointed counsel a duty to raise every 'colorable' claim
> suggested by a client would disserve the ... goal of vigorous and
> effective advocacy.... Nothing in the Constitution or our interpretation
> of that document requires such a standard."

*Id.* at 463 U.S. at 754.

Moreover, "[a] brief that raises every colorable issue runs the risk of burying
good arguments-those that, in the words of the great advocate John W. Davis, 'go for
the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 753.
(citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* [*v.
> Washington*, 466 U.S. 668 (1984)] claim based on [appellate] counsel's
> failure to raise a particular claim [on appeal], but it is difficult to
> demonstrate that counsel was incompetent."

*Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are
"properly left to the sound professional judgment of counsel." *United States v. Perry*,
908 F. 2d 56, 59 (6ᵗʰ Cir. 1990). In fact, "the hallmark of effective appellate
advocacy" is the "process of 'winnowing out weaker arguments on appeal and

focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his third through sixth claims. Appellate counsel filed a nineteen page brief which presented what now makes up the first claim raised by petitioner in his petition.[4] Petitioner has not shown that appellate counsel's strategy in presenting this claim and not raising other claims was deficient or unreasonable. Moreover, for the reasons stated by the Michigan Attorney General in the answer to the petition for writ of habeas corpus, none of the claims raised by petitioner in his post-conviction motion were "dead bang winners." Because the defaulted claims are not "dead bang winners," petitioner has failed to establish cause for his procedural default of failing to raise these claims on direct

---

[4] *See* Appellant's Brief [This Court's Dkt. # 9-13].

review. *See McMeans v. Brigano,* 228 F.3d 674, 682-83 (6ᵗʰ Cir. 2000). In addition, because these post-conviction claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6ᵗʰ Cir. 2010)(quoting *Greer v. Mitchell*, 264 F. 3d 663, 676 (6ᵗʰ Cir. 2001)).

More importantly, this Court notes that in addition to the appellate brief filed by appellate counsel, petitioner filed a supplemental Standard 4 *in pro per* brief on his appeal of right before the Michigan Court of Appeals.[5] Although petitioner raised his sentencing guidelines claim in this supplemental appeal brief, he did not present any of the issues that he would subsequently raise for the first time on his post-conviction motion for relief from judgment. Petitioner took advantage of the opportunity pursuant to the Michigan Court Rules to file a supplemental appellate brief to raise claims that had not been raised by his appellate counsel, yet failed to include what make up his third through sixth claims in his supplemental brief. Petitioner has offered this Court no explanation why he failed to raise his third through sixth claims in his supplemental *in pro per* brief that he filed as part of his

---

[5] *See* Appellant's Standard 4 Brief on Appeal. [This Court's Dkt. # 9-13].

26

direct appeal. Because petitioner has offered no reasons for his failure to include these claims in his supplemental *in pro per* brief on his direct appeal, he has failed to establish cause to excuse the default of these claims. *See Rockwell v. Palmer,* 559 F. Supp. 2d 817, 834 (W.D. Mich. 2008)(habeas petitioner did not show any cause for his failure to raise on direct appeal his claim of ineffective assistance of trial counsel, where petitioner had filed two briefs on his own behalf raising other claims that had not been asserted by his appellate counsel, but he offered no explanation for his failure to raise the ineffective assistance claim at the same time).

In the present case, petitioner has failed to show cause to excuse his default of the claims that he raised for the first time on state post-conviction review. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533.

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider his third through sixth claims as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency of evidence claim [Claim # I] is insufficient to invoke the actual innocence doctrine to the procedural default rule. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not

27

occur if the Court declined to review petitioner's procedurally defaulted claims on the merits. *See Johnson v. Smith*, 219 F. Supp. 2d 871, 882 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on his remaining claims.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists

28

of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claims to be debatable or wrong. *See Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed.R.App. P. 24(a).

## V.  CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave

to appear *in forma pauperis*.

**SO ORDERED.**


Dated:  September 5, 2013                              S/ Sean F. Cox_____
                                                     Sean F. Cox
                                                     U. S. District Court Judge


I hereby certify that on September 5, 2013, the foregoing document was served upon counsel of record by electronic means and upon    By First Class Mail at the address below:

John Bomar
155583
Macomb Correctional Facility
34625 26 Mile Road
New Haven, MI 48048


Dated:  September 5, 2013                              S/ J. McCoy_____
                                                     Case Manager

30